UNITED STATES of America, Plaintiff–Appellee,

v.

Jesus ORTIZ–ORTIZ, Defendant–Appellant.

No. 93–2309.

United States Court of Appeals, Tenth Circuit.

June 6, 1995.

Charles A. Harwood, Silver City, NM, for defendant-appellant, Jesus Ortiz–Ortiz.

Kelly H. Burnham, Asst. U.S. Atty. (John J. Kelly, U.S. Atty., with her on the brief), Las Cruces, NM, for plaintiff-appellee, U.S.

Before BALDOCK and BRORBY, Circuit Judges, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

A grand jury indictment was returned against defendant-appellant Jesus Ortiz–Ortiz (Ortiz), and his co-defendant, Ramon Hernandez–Rodriguez (Hernandez), charging them with one count of importation of marijuana in violation of 21 U.S.C. § 952(a), 21 U.S.C. § 960(a)(1) and (b)(4), and 18 U.S.C. § 2; and with one count of possession with intent to distribute less than 50 kilos of marijuana in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(D) and 18 U.S.C. § 2.

Following trial by jury, guilty verdicts were returned on both counts against both defendants. Ortiz moved for a Judgment of Acquittal under Rule 29(a) Fed.R.Crim.Procedure, at the close of the government's case. That motion was denied. Ortiz and his co-defendant proceeded to testify and to present other witnesses for the defense. At the close of all of the evidence, Ortiz renewed his Rule 29(a) motion, and it was again denied.

The sole contention presented by Ortiz in this appeal is his claim that the verdict is not supported by sufficient evidence. In such a challenge, we review the evidence "both direct and circumstantial, in the light most favorable to the government to determine whether, together with reasonable inferences therefrom, any rational trier of fact could find the defendant guilty beyond a reasonable doubt." *U.S. v. Hanson*, 41 F.3d 580, 582 (10th Cir.1994).

A review of the evidence in this case discloses that the jury was entitled to make the following findings of fact:

At 7:00 p.m. on May 5, 1993, ("Cinco de Mayo," a major holiday in the Republic of Mexico), Hernandez drove a 1978 Thunderbird from Palomas, Chihuahua, Mexico, into the primary inspection lane at the Columbus, New Mexico, Port of Entry. His only passenger was appellant Ortiz. This primary inspection lane is 50 to 75 feet from the actual border fence. At this port of entry, government agents have responsibilities as immigration inspectors to ensure that all persons entering the United States are entering legally, and they also act as customs inspectors, checking vehicles to insure that no contraband comes into the United States.

Inspector Torres asked the occupants of the Thunderbird about their citizenship, and both Ortiz and Hernandez presented resident alien cards. As he reached into the vehicle to get Ortiz's card, Torres noted a strong odor of perfume or cologne, as if someone had broken an entire bottle of it in the car. This odor indicated to Torres that there was probably contraband in the vehicle.

When questioned, Hernandez told Torres that they had come from Palomas, where they had been visiting bars, and that they were going into Columbus, New Mexico. Another inspector, Martinez, checked the license plate on the Thunderbird and entered the number into the computer. Martinez also noticed the strong perfume odor coming from the vehicle. Martinez asked who owned the car and was told it belonged to a "friend." Martinez asked this question twice because he had been working at the Columbus Port of Entry for over four years and

* The Honorable Wesley E. Brown, Senior District Judge, District of Kansas, sitting by designation.

had seen Ortiz pass through many times but never before in the Thunderbird.

Inspector Torres directed Hernandez to drive the Thunderbird into the secondary inspection area for further investigation.

At the secondary inspection station, Ortiz and Hernandez got out of the car at the request of Customs Inspector Greifinger, who began his inspection in the back seat. Greifinger immediately found that the seat was not bolted down. He lifted the seat, which was completely loose, and found packages of marijuana hidden under the bottom of the seat. A later inspection with a drug-detecting dog revealed additional bundles of marijuana in the top portion of the back seat.

The net weight of the marijuana seized was 40.6 pounds. Such an amount indicates that the marijuana was possessed with the intent to distribute. Customs Service Special Agent Briseno, who was in charge of the investigation, testified that its value ranged from $700 to $1,100 a pound, depending on where it was sold in the United States. It thus appears that the contraband seized was valued from $28,000 to $44,000.

Agent Briseno determined that the registered owner of the Thunderbird was Genardo Nunez, a resident of Palomas, Chihuahua, with a post office address in Columbus, New Mexico. All efforts to contact Nunez were unsuccessful. Used shock absorbers were found during an inventory of the contents of the Thunderbird. At the time of arrest at the port of entry, Ortiz was found to have four $100 bills. Hernandez had no money at all on his person.

Briseno questioned Ortiz and Hernandez separately after their arrest. Hernandez claimed that he set off at midday on a national holiday in Mexico to have his shock absorbers repaired in Palomas, but he met Ortiz and they visited a series of bars and drank six or seven beers each. About 5:00 p.m., they delivered the car to a Palomas mechanic for repair. The car was dismantled, and the mechanic found new shock absorbers were needed. Hernandez claimed he had $30 cash available for repairs at the outset, but he had spent half that amount drinking beers. Hernandez told Briseno that he and Ortiz started out on foot to buy new shock absorbers in Columbus, New Mexico, and along the way two people pulled up in the Thunderbird and told them—"well, you know, here's my car, go ahead and take it." The statement given by Ortiz to Briseno was basically the same as the statement given by Hernandez.

The defendants gave conflicting stories to Agent Briseno and the jury about their reasons for being in the vehicle and their relationship with its owner. At trial, Hernandez testified that he did not know the people who offered him the use of the car. Previously he had told Agent Martinez that the car belonged to a friend. Ortiz testified that he was living in Palomas on May 5 and met Hernandez there that day near the Mexican border. He accompanied Hernandez for beers at the local bars and described the trip to the auto repair shop. Ortiz testified that as they were walking to Columbus, New Mexico, two people drove up and offered them the use of their car. Ortiz stated that he did not know these people—that they were strangers. Ortiz did not think this was unusual because they appeared to be "good people." He further testified that he did not remember if he had told the customs agent that Nunez had loaned him the car, and he admitted that he knew Nunez—had "seen him around"—but that Nunez was not one of the two people in the car. Ortiz explained to the jury that the $400 he had at the time came from an unemployment check and a loan of $100 from his father.

The mechanic from Palomas testified that he advised the defendants to buy American-made shocks across the border because of their superior quality. Mr. Jose Ortiz, defendant's father, testified that he had loaned his son $100. This was the evidence submitted to the jury.

Ortiz contends that there was insufficient evidence of his knowledge or possession of the marijuana to sustain his conviction. It is his view that all the government proved in this case was that he was a passenger in a vehicle that contained marijuana when it arrived at the border and that there was no circumstantial evidence from which a jury could infer knowledge, possession, or intent

to distribute contraband. We find this contention to be without merit.

The evidence must be examined in the light most favorable to the government, and the verdict can be disturbed only if the jury could not reasonably have found defendant guilty beyond a reasonable doubt under that evidence. *U.S. v. McCoy,* 781 F.2d 168, 170 (10th Cir.1985); *U.S. v. Chavez–Palacios,* 30 F.3d 1290, 1294 (10th Cir.1994).

 The evidence to be considered includes all direct and circumstantial evidence, together with all inferences reasonably to be drawn from that evidence. Indeed, a criminal conviction may be sustained on wholly circumstantial evidence. *U.S. v. Hooks,* 780 F.2d 1526, 1529 (10th Cir.1986), *cert. den.* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199; *U.S. v. de Francisco–Lopez,* 939 F.2d 1405, 1408 (10th Cir.1991).

While mere presence at the scene of a crime is not sufficient to sustain a conviction, presence is a material and probative factor for the jury to consider. *U.S. v. Mendoza–Salgado,* 964 F.2d 993, 1005–1006 (10th Cir.1992), and Ortiz's presence in a vehicle loaded with contraband need not be ignored by the jury. *U.S. v. Espinosa,* 771 F.2d 1382, 1393 (10th Cir.1985), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561.[1] At the time of their arrest, both defendants gave similar statements concerning calls at local bars, the trip to the auto repair shop, and the mysterious appearance of two "good Samaritans" who offered the use of their car to apparent strangers without any arrangements for the return of the vehicle which contained contraband of a minimum value of $28,000. Ortiz and Hernandez gave conflicting stories as to whether the car belonged to a "friend" or to strangers. The marijuana was scarcely concealed under a loose seat in the back, and the entire car smelled strongly of perfume—commonly used to mask the odor of drugs. A reasonable jury was enti-

tled to discredit defendant's explanation of how he came to be in possession of the vehicle, its contents, and the money, and to conclude that Ortiz was engaged in a joint venture with his co-defendant and aided and abetted in the importation and possession of marijuana with intent to distribute the same in violation of the laws of the United States.[2]

The judgment of the district court is AFFIRMED.

---

**1.** In *Mendoza–Salgado,* the court stated that "(w)hile we will not presume a defendant's involvement in a conspiracy, we have long held that 'the common plan or purpose may be inferred from a combination of circumstances,'" citing *U.S. v. Savaiano,* 843 F.2d 1280, 1294, (10th Cir.1988), *cert. den.* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74.

**2.** All who are involved in a joint venture may be found to be in constructive possession of marijuana. See *U.S. v. Espinosa, supra,* 771 F.2d 1382, at 1392–93, 1394 (10th Cir.1985).