**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 16 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES MICHAEL FELDMAN,

    Defendant-Appellant.

No. 98-3086
(D. Kan.)
(D.Ct. No. 97-CR-40023-2)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BALDOCK, BRORBY**, and **KELLY**, Circuit Judges.

_____

    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

    Defendant-Appellant James Feldman appeals his conviction on drug

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

possession and conspiracy charges. Mr. Feldman challenges the sufficiency of the evidence supporting his conviction, the district court's decision denying his motion to suppress evidence, and the district court's denial of his motion to sever. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I. BACKGROUND

On the morning of January 20, 1997, Mr. Feldman was riding as a passenger in a motor home driven by co-defendant Ted Ozbirn along Interstate Highway 35 in Osage County, Kansas. Kansas State Trooper Brian K. Smith, who was on patrol in the area, noticed the motor home and began to follow and observe the vehicle for approximately two miles. Trooper Smith testified he saw the motor home drift onto the shoulder twice in less than a quarter of a mile and was concerned that the driver might be falling asleep or otherwise impaired. He stopped the vehicle to check on the driver and issue a warning ticket for failing to maintain a single lane of travel.

Trooper Smith approached the motor home, observed the driver was not in the driver's seat, walked around the front of the motor home, and encountered Mr. Ozbirn, who was approaching the passenger side from the rear. He asked Mr. Ozbirn for his driver's license and vehicle registration. As Mr. Ozbirn went back

inside the motor home to get the requested documents, Trooper Smith stated he could smell the odor of raw marijuana emanating from inside. He did not immediately enter the motor home to investigate, but instead waited for Mr. Ozbirn to come back out with his license and registration. Trooper Smith then took Mr. Ozbirn to his patrol car to issue him a written warning ticket for failing to maintain a single lane of travel. Mr. Feldman waited in the motor home while this took place.

After Trooper Smith issued the warning, he asked Mr. Ozbirn if he could ask him a few more questions. Mr. Ozbirn agreed, and Trooper Smith asked whether he was hauling any illegal guns, drugs, weapons, or other contraband. Mr. Ozbirn told him he was not, and then invited Trooper Smith to look inside the motor home if he wanted. Having received Mr. Ozbirn's consent, Trooper Smith had both defendants wait outside as he entered the vehicle to conduct a search. In the course of his search, Trooper Smith went to the back of the motor home where the smell of marijuana was strongest and eventually discovered packets of marijuana hidden under a bed frame. Trooper Smith then arrested both Mr. Ozbirn and Mr. Feldman. A later custodial search of the motor home yielded additional amounts of marijuana hidden in a closet. In all, the officers discovered approximately 863 pounds of marijuana inside the vehicle.

An indictment charged both Mr. Feldman and Mr. Ozbirn with one count each of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841 (a)(1), and one count each of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846. Before trial, Mr. Feldman joined in Mr. Ozbirn's motion to suppress the evidence seized from the search of the motor home, arguing Trooper Smith lacked sufficient grounds to stop the vehicle and that the officer unlawfully subjected Mr. Ozbirn to further questioning after he accomplished the initial purpose of the stop. The district court denied the motion, finding Trooper Smith reasonably believed he had probable cause to stop and cite Mr. Ozbirn for a traffic violation. In addition, Mr. Feldman filed a motion to sever claiming that evidence the government planned to use against his co-defendant could mislead or unduly influence the jury's determination of his guilt or innocence. The district court also denied this motion, finding Mr. Feldman had not sufficiently demonstrated that the introduction of the additional evidence against Mr. Ozbirn would unduly prejudice his own defense. The case proceeded to trial, and a jury convicted Mr. Ozbirn and Mr. Feldman on both counts. The court sentenced Mr. Feldman to sixty-three months imprisonment on each count, to be served concurrently.

II. DISCUSSION

On appeal, Mr. Feldman challenges (1) the sufficiency of the evidence supporting his conviction for both possession of marijuana with intent to distribute and conspiracy to possess marijuana with intent to distribute, (2) the district court's denial of the motion to suppress that he filed in conjunction with his co-defendant Mr. Ozbirn, and (3) the district court's refusal to grant his motion to sever. We address these contentions in turn.

A. Sufficiency of the Evidence

In determining whether sufficient evidence supports a jury's verdict, we review the record *de novo*. *United States v. Johnston*, 146 F.3d 785, 789 (10th Cir. 1998), *cert. denied*, 119 S. Ct. 839 (1999). "Evidence is sufficient to support a conviction if, considered in the light most favorable to the government, it would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *Id.* at 789. We will not question a jury's credibility determinations or its conclusions about the weight of the evidence when evaluating the evidence under this standard. *See United States v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995).

1. Conspiracy Charge

Mr. Feldman argues the evidence presented at trial was insufficient as a

matter of law to establish the essential elements of conspiracy to possess marijuana with the intent to distribute. In order to obtain a conspiracy conviction under 21 U.S.C. § 846, "the government must prove that (1) there was an agreement to violate the law; (2) Defendant knew the essential objectives of the conspiracy; (3) Defendant knowingly and voluntarily took part in the conspiracy; and (4) the coconspirators were interdependent." *United States v. Ailsworth*, 138 F.3d 843, 850 (10th Cir.) (quotation marks and citation omitted), *cert. denied*, 119 S. Ct. 221 (1998). Thus, the government had to establish Mr. Feldman "agreed to violate the law, that [he] knew at least the essential objectives of the conspiracy, and that he knowingly and voluntarily became part of the conspiracy." *United States v. Williams*, 923 F.2d 1397, 1402 (10th Cir. 1990), *cert. denied*, 500 U.S. 925 (1991). The government need not prove the commission of an overt act in furtherance of the conspiracy, and the "jury may infer an agreement constituting a conspiracy from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." *Johnston*, 146 F.3d at 789 (quotation marks and citation omitted). Furthermore, the jury may presume a defendant is a knowing participant in the conspiracy when he acts in furtherance of the objectives of the conspiracy. *See United States v. Brown*, 943 F.2d 1246, 1250 (10th Cir. 1991). "The defendant's participation in or connection to the conspiracy need only be slight, so long as sufficient evidence

exists to establish the defendant's participation beyond a reasonable doubt."

*Johnston* , 146 F.3d at 789.

In this case, the evidence shows the owner of the motor home, Mr. Chavez, offered to pay Mr. Feldman and Mr. Ozbirn $1,000 plus expenses to drive the vehicle from El Paso to Chicago. Mr. Feldman and Mr. Ozbirn discussed Mr. Chavez's offer and after some negotiation, agreed to transport the motor home. Mr. Feldman testified he expected to get at least $300 of the $1000 payment for his role in the transportation of the motor home. Mr. Feldman also testified that he and Mr. Ozbirn, a longtime business associate, traveled together in the motor home for several hundred miles over a two-day period and that he started off driving the motor home out of El Paso and thereafter drove for small periods when Mr. Ozbirn needed a break.

Furthermore, the record shows the approximately 863 pounds of marijuana contained in the motor home emitted a very strong odor. So strong, according to law enforcement officers, that the smell permeated the interior of the motor home and was immediately noticeable upon entry into the vehicle. Indeed, Trooper Smith testified he could smell the odor of raw marijuana standing outside the vehicle. Although Mr. Feldman testified he noticed only a musty smell in the

motor home, he admits he is familiar with the odor of raw marijuana. In addition,
the record shows Mr. Feldman acted overly nervous towards Trooper Smith, and
when questioned about the nature of the trip, gave an explanation that varied from
his testimony at trial. [1]

Admittedly, this evidence is purely circumstantial. However, when viewed
in the light most favorable to the government, we believe it is sufficient to allow
a reasonable jury to infer Mr. Feldman knew the motor home contained a
substantial amount of marijuana and that the purpose of the El Paso-Chicago trip
was to transport the marijuana in the motor home for later distribution. *See
United States v. Carter*, 130 F.3d 1432, 1439-40 (10th Cir. 1997), *cert. denied*,
118 S. Ct. 1856 (1998) (inferring defendant's awareness of agreement to
distribute narcotics from surrounding circumstances and defendant's conduct
towards law enforcement). This guilty knowledge, coupled with Mr. Feldman's
negotiation of the deal with Mr. Ozbirn and Mr. Chavez, his presence in the motor
home, and his assistance in driving it, is sufficient to demonstrate that Mr.

---

[1] For example, Mr. Feldman told law enforcement officers he and Mr. Ozbirn borrowed the motor home from a friend and were driving to visit his grandmother in Wisconsin. At trial, Mr. Feldman testified Mr. Chavez hired them to drive the motor home to Chicago and that he and Mr. Ozbirn planned to take a side trip to visit Mr. Feldman's grandmother in Wisconsin, although he never told his grandmother he was planning to visit.

Feldman entered into a joint venture with Mr. Ozbirn and others to transport the marijuana to Chicago in return for compensation. *Id.* at 1440; *see also United States v. Esparsen*, 930 F.2d 1461, 1472 (10th Cir. 1991), *cert. denied*, 502 U.S. 1036 (1992) (concluding that even though mere presence is insufficient to establish defendant's involvement in a conspiracy, it is a material factor to be considered). Furthermore, the jury could reasonably presume from Mr. Feldman's active assistance in transporting the motor home that he knowingly and voluntarily participated in the scheme. *See Brown*, 943 F.2d at 1250 (stating jury may presume defendant is a knowing participant in a conspiracy when he acts in furtherance of the objectives of the conspiracy). Finally, the jury could reasonably infer interdependence of the conspirators from Mr. Feldman's and Mr. Ozbirn's joint negotiations with Mr. Chavez and the co-defendants' joint performance and compensation for their role in the scheme. *See Carter*, 130 F.3d at 1440 (concluding interdependence could be inferred from co-defendants' reliance on each other to deliver narcotics).

Thus, after carefully reviewing the record, we conclude the evidence, albeit circumstantial, permitted the reasonable inference that Mr. Feldman knowingly participated with Mr. Ozbirn and others in a conspiracy to distribute marijuana.

## 2. Possession with Intent to Distribute

To support a conviction for possession of marijuana with intent to distribute, "the evidence must prove beyond a reasonable doubt the following elements: (1) the defendant knowingly possessed the illegal drug; and (2) the defendant possessed the drug with the specific intent to distribute it." *United States v. Reece*, 86 F.3d 994, 996 (10th Cir.1996) (quotation marks and citation omitted). Possession of the drug may be actual or constructive. *Id*. We have held that "[a]n individual constructively possesses property when he knowingly holds the power and ability to exercise dominion and control over the property," or has "an appreciable ability to guide the destiny of the drug." *Carter*, 130 F.3d at 1441 (quotation marks and citation omitted). This connection "may be established by circumstantial evidence and may be joint among several individuals." *Id.* (quotation marks and citation omitted).

In this case, there is no direct evidence Mr. Feldman physically possessed any marijuana. However, a review of the record convinces us a jury could reasonably conclude Mr. Feldman had constructive possession of the drugs. First, there is evidence a strong odor of raw marijuana permeated the entire motor home. This evidence, combined with Mr. Feldman's acknowledgment of his familiarity with the smell of marijuana, supports an inference of knowing

-10-

possession. *See United States v. Hooks*, 780 F.2d 1526, 1531-32 (10th Cir.), *cert. denied*, 475 U.S. 1128 (1986) (concluding presence of odor combined with other circumstantial evidence supports inference of knowing possession). Although Mr. Feldman testified he detected only a "musty smell" in the motor home and had no knowledge of the marijuana, a reasonable jury was entitled to discredit his explanation. *See United States v. Ortiz-Ortiz*, 57 F.3d 892, 895 (10th Cir. 1995) (noting jury was free to discredit defendant's explanation of contents of the vehicle he was riding in); *United States v. Levine*, 41 F.3d 607, 610 (10th Cir. 1994) (when reviewing for sufficiency of the evidence, we "accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses.").

Furthermore, the evidence shows Mr. Feldman, along with Mr. Ozbirn, rode in and drove the motor home containing marijuana for close to two days. We acknowledge mere proximity to illegal drugs, without more, is insufficient to support a finding of possession. *See Ortiz-Ortiz*, 57 F.3d at 895. However, "such proximity, presence or association is sufficient when accompanied ... with testimony connecting the defendant with the incriminating surrounding circumstances." *United States v. Espinosa*, 771 F.2d 1382, 1397 (10th Cir.) (quotation marks and citation omitted), *cert. denied*, 474 U.S. 1023 (1985). Here,

Mr. Feldman's admission that he drove the motor home, albeit for brief periods, supports a finding that he had some control over the vehicle and that control, when combined with other evidence, supports an inference of knowing possession. *See United States v. Pineda-Ortuno*, 952 F.2d 98, 102 (5th Cir.) ("Knowing possession can be inferred from a defendant's control over the vehicle in which the illicit substance is contained in a hidden compartment if there exists other circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge."), *cert. denied*, 504 U.S. 928 (1992).

Moreover, the government presented evidence showing Mr. Feldman engaged in a joint enterprise with Mr. Ozbirn to deliver the motor home and its contents. Specifically, the record shows Mr. Ozbirn and Mr. Feldman jointly negotiated the deal with Mr. Chavez, jointly agreed to receive $1000 for transporting the motor home, and jointly performed under that agreement. Such evidence supports an inference that Mr. Feldman had an appreciable ability to guide the destiny of the drugs and thus had constructive possession of them, even though he was not driving the motor home at the time of his arrest. *See Ortiz-Ortiz*, 57 F.3d at 895 (concluding defendant passenger had constructive possession of marijuana because he engaged in a joint venture with the driver co-defendant to possess and distribute the drugs); *Espinosa*, 771 F.2d at 1397

(finding defendant had constructive possession of drugs where he and his co-defendants participated in a "joint undertaking" to possess and distribute marijuana); *United States v. Massey*, 687 F.2d 1348, 1354 (10th Cir. 1982) (concluding evidence of defendant's participation in a joint enterprise permitted inference of constructive possession even though defendant was not driving the car containing the marijuana).

The second element of specific intent to distribute may be inferred from both the quantity of drugs discovered in the motor home and Mr. Feldman's joint enterprise with Mr. Ozbirn to deliver the motor home and its contents to Chicago. In *United States v. Powell*, 982 F.2d 1422 (10th Cir. 1992), *cert. denied*, 507 U.S. 946 (1993), we held that intent to distribute drugs can be inferred from the possession of a large quantity of a controlled substance. *Id*. at 1430. Authorities removed over eight hundred pounds of marijuana from the motor home. Such a quantity easily permits the inference of intent to distribute. In addition, by Mr. Feldman's own admission, he and Mr. Ozbirn intended to deliver the motor home to Chicago in return for payment. Combining this with the reasonable inference that he had knowledge and constructive possession of the drugs contained in the motor home allowed the jury to conclude Mr. Feldman had the specific intent to distribute the marijuana. For these reasons, we affirm the possession with intent

to distribute conviction as supported by sufficient evidence.

B.  Denial of Motion to Suppress

We incorporate our holding from the companion case *United States v. Ozbirn*, ___ F.3d ___ , 1999 WL 641875 (10th Cir. Aug. 24, 1999), to resolve Mr. Feldman's arguments regarding his motion to suppress evidence.  The *Ozbirn* opinion addresses all contentions raised by Mr. Feldman on appeal and we need not reiterate our analysis in this order and judgment.  Suffice it to say, the trial court was correct in denying Mr. Feldman's motion to suppress.

C.  Denial of Motion to Sever

Lastly, Mr. Feldman argues the district court erred in refusing to sever his trial from that of his codefendant.  A decision to grant or deny severance is within the sound discretion of the district court and we will not disturb a court's decision absent an affirmative showing of abuse of discretion.  *United States v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997).  To establish an abuse of discretion, the defendant must show actual prejudice resulted from the denial and not merely a "spillover effect" from the damaging evidence presented against a codefendant. *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996).

Mr. Feldman contends the district court erred in denying severance because certain evidence presented by the government relating to Mr. Ozbirn's previous involvement with drugs "could mislead the jury into making a determination as to his guilt or innocence and knowledge of illegal drugs in the vehicle" and thus prejudiced his trial. However, nothing Mr. Feldman has presented convinces us the court's decision constituted an abuse of discretion. As discussed above, the evidence against Mr. Feldman on both counts was sufficient to support his conviction. To the extent the charges against Mr. Ozbirn involved evidence that would not have been presented had Mr. Feldman been tried alone, Mr. Feldman offers only speculation that the jury may have inferred his guilt from this evidence. "Such conclusory 'spillover' claims alone do not warrant severance so long as there is [otherwise] sufficient evidence in the record" to support the conviction. *United States v. Durham*, 139 F.3d 1325, 1334 (10th Cir.), *cert. denied*, 119 S. Ct. 158 (1998); *see also United States v. Wacker*, 72 F.3d 1453, 1468 (10th Cir. 1996) (noting prejudice is not shown by a hypothesis of prejudice). Moreover, the district court gave a limiting instruction to the jury which required them to "analyze what the evidence in the case shows with respect to one defendant, leaving out of consideration entirely any evidence admitted solely against the other defendant." This instruction cured any potential spillover effect. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) (noting trial court's

-15-

use of limiting instructions will often serve to cure any risk of prejudice caused by a joint trial); *United States v. Emmons*, 24 F.3d 1210, 1219 (10th Cir. 1994) (concluding jury instruction eliminated any alleged spillover effect of disproportionate evidence presented against codefendant). Thus, we find no indication that the district court abused its discretion in denying Mr. Feldman's motion to sever.

The judgment of the district court is **AFFIRMED.**


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge