FILED
United States Court of Appeals
Tenth Circuit

November 29, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WALLACE LAVERNE LAWRENCE,
III,

Defendant-Appellant.

No. 10-6257
(D.C. No. 5:10-CR-00011-D-1)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

---

Following trial, a jury convicted Defendant Wallace Laverne Lawrence III

on (1) seven counts of wire fraud/aiding and abetting, 18 U.S.C. § 1343 and § 2,

involving the use of internet ads in a scheme to defraud persons seeking help in

paying bills; (2) two counts of fraud in connection with access devices/aiding and

---

[*]      After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

abetting, *id.* § 1028(a)(7), § 1029(a)(2), and § 2, involving the use of stolen

credit-card, debit-card, and bank numbers to obtain goods and services; and

(3) one count of aggravated identity theft/aiding and abetting, *id.* § 1028A(a)(1)

and § 2, involving the unauthorized use of other persons' means of identification

(again, credit-card, debit-card, and bank numbers) in furtherance of the wire fraud

scheme underlying counts one to seven.

Lawrence now appeals, challenging the sufficiency of the evidence to

support his conviction on the wire fraud and identity theft counts (counts one to

seven and ten),[1] and objecting to the use of sentence enhancements for obstruction

of justice and being a leader or organizer. We find no merit to his arguments and

affirm for the reasons explained below.

## I. SUFFICIENCY OF THE EVIDENCE OF CONVICTION

We review the legal sufficiency of the evidence de novo, but we do not

encroach upon the jury's exclusive role in weighing evidence, resolving conflicts,

and assessing witness credibility. *See, e.g.*, *United States v. Keck*, 643 F.3d 789,

793 (10th Cir. 2011); *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011).

"[W]e ask only whether taking the evidence—both direct and circumstantial,

together with the reasonable inferences to be drawn therefrom—in the light most

---

[1]    The heading of the relevant section of his opening brief also refers to one of the access-device fraud counts (count nine), but the count is never mentioned again in the body of his argument or in his reply brief. *See* Aplt. Opening Br. at 9-12; Aplt. Reply Br. at 1-4.

favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Keck*, 643 F.3d at 793 (internal quotation marks omitted). A brief summary of the fraudulent scheme, established at trial by ample testimonial and documentary evidence, will assist in understanding the specific counts of conviction Lawrence has challenged.

Victims of the scheme were solicited initially by fliers and later by ads on the "Craigslist" web site. These solicitations were directed at financially-strapped persons, promising relief from immediate threats like the disconnection of basic services. They gave a name and number to call, which varied from ad to ad but evidence traced the names and numbers to Lawrence. When victims called, Lawrence told them that their bills would be paid in return for a cash payment of one-half the amount owed, required only after they received confirmation from their creditors that the bills had in fact been paid. The cover story was typically that some beneficent source had provided funding for a debt-assistance program. Creditors were actually paid with stolen debit-card, credit-card, or bank numbers obtained at Lawrence's request by his girlfriend, co-defendant Susan Acuna, from medical offices where she worked. Victims were given information to confirm the payments and then put in contact with a courier (Acuna, Carrie DeLaPorte, or co-defendant Carri Adams) who collected the cash for Lawrence. When creditors later reversed the fraudulent payments and victims tried to reach Lawrence for an

explanation, they found that the contact numbers they were given at the outset–for prepaid cell phone accounts–had been disconnected.

### A. Wire Fraud/Aiding and Abetting (Counts One through Seven)

The wire fraud counts relate to the Craigslist ads, which were "transmitted by means of wire . . . communication in interstate . . . commerce," as required by § 1343, when the posted information was conveyed to out-of-state servers. Lawrence contends the government did not present sufficient evidence to show he placed the ads and thereby engaged in interstate communications. We disagree. In assessing the evidence it must be kept in mind that, given the alternative aiding and abetting theory on the wire fraud counts, it was not necessary for the government to prove Lawrence posted the ads himself if ads he did not personally handle were posted by co-defendant Carri Adams with his help or at his request in furtherance of the fraudulent scheme.[2]  *See* 18 U.S.C. § 2.  It should also be kept in mind that Lawrence does not (and realistically could not) challenge the sufficiency of the evidence establishing his criminal responsibility in the scheme

---

[2]     Lawrence contends his conviction cannot be upheld on this basis because "the government fails to present . . . any mention in the Indictment of a charge of aiding and abetting."  Reply Br. at 3.  This contention is meritless.  The indictment charged Lawrence under both the wire fraud and aiding and abetting statutes in counts one to seven, R. Vol. 1 at 41, and, consistent with that joint charge, referred broadly to "Lawrence and Adams us[ing] [computers traced to Craigslist ads] . . . to transmit the [predicate] interstate wire communications," without exclusively tying either defendant to specific ads, *id.* at 40, since each could be liable for aiding and abetting the other.  This theory was also clearly implemented in the jury instructions.  *Id.* at 343-45.

-4-

of which the ads were an integral component.  His challenge is limited specifically to the proof tying him to the interstate communications.

The ads cited in counts three, four, and six were traced to the IP address for Lawrence's home computer, which had an internet history indicating its use to manage Craigslist ads.  Thus, the evidence showed that ads with information tied to Lawrence and central to his fraudulent scheme were posted from his computer. That is a sufficient basis upon which to infer he posted the ads.  He speculates that Carri Adams or Sandra Acuna could have used his computer to post the ads, and insists such a possibility renders the case against him on this point too weakly circumstantial.[3]  But there is no evidence Acuna posted any ads; her testimony indicated, rather, that the Craigslist activity was a matter between Lawrence and Adams.  And while Adams admitted posting ads for Lawrence, she denied using Lawrence's computer to do so.  The jury was entitled to believe this testimony, as it was not "inherently incredible."  *United States v. Cardinas Garcia*, 596 F.3d 788, 794 (10th Cir.) (internal quotation marks omitted), *cert. denied,* 130 S. Ct. 3299 (2010).  Of course, even if Adams had posted the ads, the evidence would clearly support the reasonable inference that she did so at Lawrence's request in

---

[3]     At certain points Lawrence appears to be saying the government's case was legally deficient simply because it was circumstantial.  To the extent this is the thrust of his argument, we reject it as contrary to longstanding circuit precedent. *See, e.g.*, *United States v. Ortiz-Ortiz*, 57 F.3d 892, 895 (10th Cir. 1995) (citing cases); *Myers v. United States*, 415 F.2d 318, 319 (10th Cir. 1969) (same).

furtherance of his scheme to solicit the victims he then defrauded—a clearly sufficient basis to find him guilty on the aiding and abetting theory.

The ads cited in counts two, five, and seven were traced to the IP address of a computer used at work by Adams, who admitted posting the ads on Craigslist at the request of and with information provided by "Marcus Chandler"—an alias Lawrence used repeatedly for the scheme.[4]  Acuna, who knew of Lawrence's use of that alias (and several others that appeared in the ads), corroborated that he had Adams help with posting ads on Craigslist.  This evidence is sufficient to place aiding and abetting responsibility onto Lawrence for the ads in question.

Finally, the ad cited in count one was not traced to either Lawrence's or Adams's computers but to an IP address for a computer in the Pioneer Library in Norman, Oklahoma.  But the name in the ad was the familiar Lawrence alias Marcus Chandler and the contact number was for Lawrence's phone.  While perhaps a little less compelling than the evidence relating to the other wire fraud counts, given the evidence already discussed tying the other Craigslist ads for the scheme solely to Lawrence and Adams, the jury could reasonably infer that one of these defendants posted the ad in association with the other defendant so as to

---

[4]     Adams, who also admitted collecting cash payments for Marcus Chandler, insisted she was unaware of the fraudulent nature of the scheme.  She claimed she spoke by phone with Chandler only once, never met him, and communicated with him about the ads solely through text messages.  The jury rejected this strained version of events and found her guilty of the wire fraud as well.

permit direct liability for the former and aiding and abetting liability for the latter.

**B.  Aggravated Identity Theft/Aiding and Abetting (Count Ten)**

The identity theft count relates to the use of the stolen credit card, debit card, and bank numbers "during and in relation to the commission of the wire fraud scheme."  R. Vol. 1 at 43.  This count, directed at Lawrence and Acuna, was also charged alternatively under the aiding and abetting statute.  *Id.*

The nature of Lawrence's evidentiary-sufficiency objection to this count is not entirely clear.  He includes some nominal references to it in both his opening and reply briefs, where he develops his challenge to the government's case on wire fraud discussed above, but nowhere does he explain what was deficient about the government's case on this count.  Given this silence, and the fact that aggravated identity theft requires a predicate felony violation, 18 U.S.C. § 1028A(a), here the wire fraud, presumably Lawrence intends only to argue that the asserted invalidity of his wire fraud conviction entails the invalidity of his aggravated identity theft conviction as well.  With that understanding, our affirmance of the former is the end of the matter.  *See, e.g.*, *United States v. Luke*, 628 F.3d 114, 122-23 (4th Cir. 2010).

In any event, to the extent Lawrence has put at issue the sufficiency of the evidence specifically concerning his guilt on the identity theft allegation, the issue is easily resolved.  While there is no evidence Lawrence himself stole

identifying information used to make the unauthorized payments to creditors, that was not required for the aggravated identity theft charge. He need only have "knowingly transfer[red], possess[ed], or use[d]" such information to make the payments, 18 U.S.C. § 1028A(a), and there is ample evidence he did that. Further, given the alternative aiding and abetting theory, Sandra Acuna's transfer, possession, and use of the information at Lawrence's direction or request also provided a basis for his guilt on this count.

## II.  SENTENCING ISSUES

Lawrence also objects to the enhancement of his sentence for being a leader or organizer, which increased his offense level by two, United States Sentencing Guidelines § 3B1.1(c) (2010), and for obstructing justice, which also increased his offense level by two, *id.* § 3C1.1.  When considering challenges to the district court's imposition of sentencing enhancements, we review its interpretation of the guidelines de novo and its factual findings for clear error, giving due deference to its application of the guidelines to the facts.  *United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011); *United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008).

### A.  Leader or Organizer Enhancement

The government argued for the leader or organizer enhancement on the ground that trial evidence had shown a scheme implemented through Lawrence's direction of a number of role-playing participants.  R. Vol. 4 at 1167-69; *see also*

R. Vol. 3 at 45-46, 73.  The defense argued that the scheme was just "a mutuality of everybody coming up with something that they could contribute."  R. Vol. 4 at 1169-70; *see also* R. Vol. 3 at 72.  The district court took the government's view of the facts, concluding that "the evidence at trial clearly established [Lawrence] as a leader, organizer, manager of criminal conduct involved in this case." R. Vol. 4 at 1170-71.

As a legal matter, this determination follows the established interpretation of the leader or organizer enhancement:  "the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because § 3B1.1 is an enhancement for organizers and leaders, not for important or essential figures."  *United States v. Uscanga-Mora*, 562 F.3d 1289, 1296 (10th Cir. 2009) (internal quotation marks and brackets omitted).  As for its evidentiary basis, "[t]o constitute clear error, we must be convinced that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal."  *United States v. Garcia*, 635 F.3d 472, 478 (10th Cir. 2011) (internal quotation marks omitted).  It was certainly plausible to conclude on the trial record that Lawrence implemented the fraudulent scheme outlined earlier by recruiting participants and directing their activities, including:  (1) having Sandra Acuna obtain third-party identification information for use in temporarily satisfying creditors of the victims; (2) having Carri Adams create and post Craigslist ads with false information he supplied in order to draw victims

-9-

into the scheme; and (3) having Acuna, Adams, and Carrie DeLaPorte act as couriers to meet with victims and collect cash payments for him on terms he specified. We have no hesitation in affirming the district court's imposition of the leader or organizer enhancement.

### B. Enhancement for Obstruction of Justice

The government argued for the obstruction-of justice-enhancement on the basis of a recorded phone conversation between Lawrence and Acuna following Lawrence's arrest. In the conversation, he told Acuna not to talk to investigators about his role in the scheme (repeatedly telling her not to "cash [him] in") but to attribute blame to his "contact" Marcus Chandler instead. R. Vol. 4 at 1162-64; *see also* R. Vol. 3 at 44, 46, 67, 73-74; Addendum to Br. of Plaintiff-Appellee, tab 23 (recording). Of course, as she testified at trial, Acuna knew that name simply to be an alias Lawrence used in the scheme. Thus, in the government's view, Lawrence had instructed Acuna to hide his criminal acts from investigators by misdirecting them to a fictitious person—a patent effort to obstruct justice by influencing a co-defendant/witness in a case. The defense tried to paint the call as an innocent effort by Lawrence to calm Acuna, advise her in the exercise of her legal rights, and persuade her not to falsely incriminate him but let him deal with the official inquiries himself. *See* R. Vol. 4 at 1164-65; *see also* R. Vol. 3 at 67, 73. The district court concluded that the government's view "accurately reflects the nature of the conversation at issue." R. Vol. 4 at 1165.

Review of the recorded conversation fully supports the district court's assessment. It is certainly a plausible, if not compelling, interpretation of the conversation to find that Lawrence was warning Acuna to keep quiet about his criminal activity and divert the investigation away from him. Lawrence argues that even accepting this view, his conduct could not in any event constitute obstruction of justice, because (1) the district court did not make a finding that any of his statements to Acuna were material, a requirement recognized in *United States v. Jimenez-Ortega*, 472 F.3d 1102, 1103-04 (9th Cir. 2007); and (2) Acuna ultimately gave evidence against him, so his efforts did not materially hinder the prosecution, a requirement recognized in *United States v. Morales-Sanchez*, 609 F.3d 637, 640-41 (5th Cir. 2010). Neither objection is persuasive.

As a matter of common sense and as the guideline application notes dictate—and *Jiminez-Ortega* itself reflects—the materiality of a defendant's own statements is relevant only when the obstruction enhancement is based on *his* false statements, *see, e.g.*, USSG § 3C1.1, cmt. nn. 4(f) - (h), not when it is based on his efforts to influence a witness's statements, *see id.* § 3C1.1 cmt. n. 4(a). *United States v. Phillips*, 367 F.3d 846, 859 (9th Cir. 2004) (discussing USSG § 3C1.1, cmt. nn. 4(a) & 4(g)); *see Jimenez-Ortega*, 472 F.3d at 1103. Thus, the materiality of Lawrence's statements to Acuna, in terms of their direct relevance to his guilt, is simply not a consideration here. And while it may be that the witness-influence inquiry could properly look to the materiality of the matters on

which *the witness* was to testify, we need not pursue that point further here, given the obvious materiality of Acuna's testimony against Lawrence.

As for the failure of Lawrence's efforts to influence Acuna's testimony and thereby materially hinder his prosecution, this court and others have recognized that the obstruction enhancement—which refers specifically in this regard to "unlawfully influencing a . . . witness . . . *or attempting to do so*," USSG § 3C1.1 cmt. n. 4(a) (emphasis added)—applies regardless of whether the defendant succeeds in influencing the witness. *See, e.g.*, *United States v. Fetherolf*, 21 F.3d 998, 1000 (10th Cir. 1994); *Phillips*, 367 F.3d at 859. The *Morales-Sanchez* case relied on by Lawrence is not to the contrary, nor is it even remotely relevant. It relates to the destruction or concealment of evidence governed by USSG § 3C1.1, cmt. n. 4(d), which imposes an extra material-hindrance requirement when that conduct, such as swallowing or otherwise disposing of a controlled substance, occurs simultaneously with the defendant's arrest. *See Morales-Sanchez*, 609 F.3d at 640. Lawrence's conduct was both substantively and temporally outside the scope of Application Note 4(d).

## III. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-12-