DIETZ, Judge.
 

 *830
 
 Defendant Glenwood Earl Downey appeals the denial of his motion to suppress. Downey argues that law enforcement impermissibly extended the duration of his traffic stop without reasonable suspicion that he committed some other crime.
 

 As explained below, there is ample competent evidence in the record to support the trial court's findings on various factors that this Court (and others) have found sufficient to establish reasonable suspicion. Before and during the time in which the officer prepared the warning citation, the officer observed the following: Downey's nervous behavior; Downey's use of a particular brand of powerful air freshener favored by drug traffickers; Downey's prepaid cellphone; the fact that Downey's car was registered to someone else; Downey's vague and suspicious answers to the officer's questions concerning what he was doing in the area; and Downey's prior conviction on a drug offense. These findings, supported by the record, readily support the trial court's conclusion that the officer had reasonable suspicion to detain Downey before the traffic stop concluded.
 

 Facts and Procedural History
 

 On 26 July 2011, Deputy Brian Clifton of the Johnston County Sherriff's Office stopped Defendant Glenwood Earl Downey for a traffic violation. Deputy Clifton approached Downey's vehicle and asked to see his driver's license and registration. As Downey handed over the requested documentation, Deputy Clifton noticed that Downey's hands were shaking, that his breathing was rapid, and that he failed to make eye contact.
 

 Deputy Clifton also noticed a prepaid cellphone inside the vehicle and a Black Ice air freshener hanging from the rearview mirror. Deputy
 
 *831
 
 Clifton had received special training in drug interdiction, during which he learned that Black Ice air fresheners, because of their strong scent, are frequently used by drug traffickers. As a result of that same training, he also knew that prepaid cellphones were commonly used by persons involved in narcotics trafficking.
 

 Deputy Clifton further noted that the car was not registered to Downey. Based on his training, Deputy Clifton had learned that third-party vehicles are often used by drug traffickers because it makes it more difficult for police to track those individuals or tie them to a specific address.
 

 Deputy Clifton asked Downey to exit the vehicle and accompany him to his patrol car.
 

 *519
 
 Once inside the patrol car, Deputy Clifton asked Downey why he was in the area. Downey vaguely responded that he was searching for a place to rent. Deputy Clifton asked Downey his motive for moving and offered the high cost of living in Downey's current town as a potential motive. Downey indicated that the expensive cost of living in his current town was indeed the reason he wanted to move. When Deputy Clifton further inquired as to whether Downey was able to find any places for rent, he vaguely responded that he had seen a few places on "what's that, 231?"
 

 Based on indicators gleaned from a warrants check, Deputy Clifton also asked Downey about his criminal history. Downey responded (honestly) that he had served prison time for several breaking and entering convictions and that he had a cocaine-related drug conviction.
 

 Deputy Clifton issued Downey a warning ticket for the traffic violation and returned his documentation. But Deputy Clifton continued to question Downey about his criminal history and eventually asked Downey for consent to search his vehicle. Downey declined to give consent. Deputy Clifton then asked Downey if he would consent to a canine sniff of the exterior of the vehicle. Again, Downey declined.
 

 Deputy Clifton then called for a K-9 unit. The K-9 team arrived fourteen minutes after Deputy Clifton retuned Downey's documentation and issued him the warning citation. A dog sniffed the exterior of the vehicle and alerted to the presence of drugs inside. Officers searched the vehicle and found a digital scale, several cellphones in the glove compartment, and a paper napkin containing approximately 3.2 grams of crack cocaine in the center console ashtray area.
 

 On 6 September 2011, the State indicted Downey for possession with intent to sell and deliver cocaine, maintaining a place to keep
 
 *832
 
 controlled substances, possession of drug paraphernalia, and attaining habitual felon status.
 

 On 21 September 2012, Downey filed a motion to suppress all evidence obtained from his traffic stop. On 3 December 2012, the trial court held a hearing on Downey's motion to suppress and, on 31 December 2012, issued an order denying the motion.
 

 Downey pleaded guilty but reserved his right to appeal the denial of his motion to suppress. He then timely appealed.
 

 On 3 March 2015, in an unpublished opinion, this Court vacated the trial court's judgment and instructed the trial court on remand to determine whether Deputy Clifton had developed reasonable articulable suspicion of criminal activity before the officer returned Downey's documentation and issued the warning citation.
 
 State v. Downey (Downey I)
 
 ,
 
 239 N.C.App. 574
 
 ,
 
 771 S.E.2d 633
 
 (2015) (unpublished).
 

 On remand, both parties agreed that no further evidence was necessary for the court to determine the issue. On 16 September 2015, the trial court issued a new order denying Downey's motion to suppress. On 30 September 2015, Downey again pleaded guilty while reserving his right to appeal the denial of his motion to suppress and timely appealed.
 

 Analysis
 

 Downey argues that the trial court's findings on remand from this Court do not support its conclusion that the officer had reasonable suspicion to extend his traffic stop. We disagree.
 

 "On review of a motion to suppress evidence, an appellate court determines whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law."
 
 State v. Haislip
 
 ,
 
 362 N.C. 499
 
 , 499,
 
 666 S.E.2d 757
 
 , 758 (2008). "The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting. The conclusions of law, however, are reviewed de novo."
 
 Id
 
 . at 500,
 
 666 S.E.2d at 758
 
 .
 

 When a law enforcement officer initiates a valid traffic stop, as happened here, the officer may not extend the duration of that stop beyond the time necessary to issue the traffic citation unless the officer has reasonable, articulable suspicion of some other crime.
 

 *520
 

 State v. Bedient
 
 , --- N.C.App. ----, ----,
 
 786 S.E.2d 319
 
 , 323 (2016). This Court vacated and remanded the trial court's initial order denying Downey's motion to suppress for the trial court to make findings concerning whether the officer
 
 *833
 
 had reasonable suspicion to extend the stop.
 
 Downey I
 
 ,
 
 239 N.C.App. 574
 
 ,
 
 771 S.E.2d 633
 
 .
 

 On remand, the trial court made the following pertinent findings in support of its conclusion that the officer had reasonable suspicion:
 

 16. Deputy Clifton formed the suspicion that Defendant was engaged in illegal drug activity at that time based on: Defendant's nervousness, rapid breathing, and lack of eye contact; the presence of the Black Ice air freshener in the BMW automobile Defendant was driving; the fact that the BMW was registered to a third person; the presence of the Boost prepaid cell phone in the BMW; Defendant's statements as to his reason for being in the area; and Defendant's admission that he had been arrested and imprisoned for possession of cocaine in the past.
 

 17. At 2:45 p.m., Deputy Clifton issued a written warning citation to Defendant for driving left of the center line.
 

 18. Deputy Clifton formed the suspicion that Defendant was engaged in illegal drug activity before he issued the written warning citation to Defendant and returned Defendant's driver's license and the vehicle registration card to Defendant.
 

 Downey first challenges the trial court's finding concerning his nervousness during the traffic stop. Downey contends that the trial court failed to specify whether the nervousness on which the court relied occurred before or after the officer issued the citation. As explained below, we hold that the trial court's finding addressed Downey's nervousness before the officer issued the traffic citation, and that finding is supported by competent evidence in the record.
 

 To be sure, the record indicates that Downey displayed significant nervousness throughout the encounter, including after the traffic stop concluded. But the trial court's reference to Downey's nervousness "at that time" in the relevant finding demonstrates that the court considered only nervousness evident before the officer issued the warning citation. The preceding paragraphs of the court's findings indicate that "at that time" referred to the time period "[w]hile preparing the warning citation." Moreover, the trial court's finding concerning nervousness is contained within a list of other factors-including the type of air freshener in the car, the third-party vehicle registration, and the prepaid
 
 *834
 
 cellphone-all of which the officer observed before, and
 
 only
 
 before, issuing the citation.
 

 Finally, in the initial appeal, this Court expressly instructed the trial court on remand to determine if reasonable suspicion existed
 
 before
 
 the officer issued the warning citation, citing applicable Fourth Amendment jurisprudence concerning extension of a traffic stop. This Court presumes that the trial court knows the law.
 
 State v. Newson
 
 ,
 
 239 N.C.App. 183
 
 , 195,
 
 767 S.E.2d 913
 
 , 920 (2015). Thus, we are confident that the trial court's finding addressed Downey's nervousness before the traffic stop concluded, as this Court instructed in its mandate.
 
 See
 
 id.
 

 Downey next argues that the record does not support the trial court's finding of nervousness before the traffic stop concluded. Again, we disagree. The officer testified that Downey's "hands were shaking as he handed [him] his documents, driver's license and registration" and confirmed that timing later in his testimony:
 

 Q. Deputy Clifton, you've testified that what you described in your testimony concerning that his hands were shaky and that he was breathing heavy, that was when you first approached the vehicle?
 

 A. Yes, sir.
 

 The officer also testified that, when Downey initially got into the officer's patrol car, while the officer still was preparing to issue the citation, Downey "didn't make eye contact and his breathing was elevated." This testimony provides sufficient competent evidence to support the trial court's finding that Downey exhibited nervous behavior before the traffic stop terminated. We are therefore bound by this finding, regardless of whether there is other, conflicting evidence in the
 
 *521
 
 record.
 
 See
 

 Haislip
 
 ,
 
 362 N.C. at 500
 
 ,
 
 666 S.E.2d at 758
 
 .
 

 Finally, Downey argues that, even if the record supports the trial court's findings concerning nervousness, all of the court's findings, taken together, are insufficient to support its conclusion that the officer developed reasonable suspicion before the traffic stop ended. Once again, we disagree.
 

 In addition to the trial court's finding that Downey exhibited "nervousness, rapid breathing, and lack of eye contact" during the traffic stop, the trial court made a number of other, unchallenged findings concerning factors that contributed to the officer's reasonable suspicion. The court found that Downey's car had a specific brand of air freshener that the officer testified was "a trend that is involved in the drug
 
 *835
 
 smuggling community" because of the strength of its odor. The court also found that Downey used a prepaid cellphone and was driving a car registered to a third party, both of which, in the officer's experience and based on training he had received, were indicators of potential drug trafficking. The court also found that Downey admitted he had a previous drug conviction. Finally, the court found that the officer relied on "Defendant's statements as to his reason for being in the area," which the officer testified were vague and suspicious.
 

 These six factors taken together-Downey's nervous behavior, his use of a particular type of air freshener favored by drug traffickers, his prepaid cellphone, his use of a car registered to someone else, his suspicious responses to Deputy Clifton's questioning, and his prior drug conviction-are sufficient to support the trial court's conclusion that reasonable suspicion existed.
 
 See
 

 State v. Castillo
 
 , --- N.C. App. ----, ----,
 
 787 S.E.2d 48
 
 , 55-56 (2016) (finding reasonable suspicion based on defendant's unusual story regarding travel; a masking odor; third-party car registration; nervousness; and defendant's prior drug convictions);
 
 State v. Euceda-Valle
 
 ,
 
 182 N.C.App. 268
 
 , 274-75,
 
 641 S.E.2d 858
 
 , 863 (2007) (finding reasonable suspicion based on defendant's nervousness; smell of air freshener coming from vehicle; vehicle not registered to occupants; occupants' suspicious responses when questioned about travel plans);
 
 see also
 

 United States v. Valenzuela-Rojo
 
 ,
 
 139 F.Supp.3d 1252
 
 , 1260 (D. Kan. 2015) (noting that "[t]he following may contribute to reasonable suspicion for extending a traffic stop: an officer's knowledge that drug couriers frequently use rental cars; a motorist's extreme nervousness"; "[s]trong odors" potentially "being used to mask the smell of drugs"; and the use of a type of cellphone that the officer "knows to be commonly used as [a] 'burner' phone[ ] in the drug trade").
 

 The dissent, citing
 
 State v. Bullock
 
 , --- N.C.App. ----, ----,
 
 785 S.E.2d 746
 
 , 751,
 
 writ of supersedeas allowed
 
 , --- N.C. ----,
 
 786 S.E.2d 927
 
 (2016), contends that "the tolerable duration of the traffic stop ended when Deputy Clifton communicated he was issuing Defendant a warning citation for the violation, not when Deputy Clifton actually issued the warning citation." This is a misreading of
 
 Bullock
 
 .
 
 Bullock
 
 does not hold that, once an officer tells the defendant he will receive a citation and then returns to the patrol car to prepare it, the stop is over and the defendant is free to drive away without waiting to receive it.
 
 Bullock
 
 merely holds, as
 
 Rodriguez v. United States
 
 , --- U.S. ----,
 
 135 S.Ct. 1609
 
 (2015) requires, that an officer may not delay issuing a traffic ticket (or warning citation), or delay returning a suspect's driver's license or registration, beyond the time reasonably necessary to complete the traffic stop:
 

 *836
 
 Officer McDonough completed the mission of the traffic stop when he told defendant that he was giving defendant a warning for the traffic violations as they were standing at the rear of defendant's car....
 
 Officer McDonough was still permitted to check defendant's license and check for outstanding warrants
 
 . But, he was not allowed to do so
 
 in a way that prolong[ed] the stop
 
 , absent the reasonable suspicion ordinarily demanded to justify detaining an individual.
 

 Bullock
 
 , --- N.C.App. at ----,
 
 785 S.E.2d at 751
 
 (second alteration in original) (emphasis added).
 

 *522
 
 Here, the record does not contain any evidence that the officer delayed the preparation of the warning citation in order to further question Downey. Indeed, the video recording of the officer's interaction with Downey inside the patrol car appears to show him diligently preparing the warning citation as he questions Downey. And, in any event, this is not an argument Downey made, either in his appellate briefs or in the trial court; it is newly raised by the dissent. This Court does not address constitutional arguments not raised by a criminal defendant in his appellate briefing.
 
 State v. Allen
 
 ,
 
 360 N.C. 297
 
 , 308,
 
 626 S.E.2d 271
 
 , 281 (2006).
 
 [1]
 

 The dissent also contends that all of the factors identified by the trial court are "consistent with innocent travel." That is certainly true. And any one of those factors, or perhaps even several together, might not be enough to constitute reasonable suspicion. But
 
 all six
 
 factors taken together are sufficient, as this Court and others repeatedly have held.
 
 See
 

 Castillo
 
 , --- N.C.App. at ----,
 
 787 S.E.2d at
 
 55-56 ;
 
 Euceda-Valle
 
 ,
 
 182 N.C.App. at 274-75
 
 ,
 
 641 S.E.2d at
 
 863 ;
 
 Valenzuela-Rojo
 
 ,
 
 139 F.Supp.3d at 1260
 
 .
 

 The reasonable suspicion test, by its nature, will rely on factors that are suspicious, but which could be associated with innocent behavior, as well as criminal behavior.
 
 United States v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 9-10,
 
 109 S.Ct. 1581
 
 (1989). Were we to require otherwise, as the dissent suggests, reasonable suspicion would become synonymous with probable cause. Fourth Amendment jurisprudence distinguishes these two tests for a reason.
 
 See
 

 Alabama v. White
 
 ,
 
 496 U.S. 325
 
 , 329-31,
 
 110 S.Ct. 2412
 
 ,
 
 110 L.Ed.2d 301
 
 (1990).
 

 *837
 
 Thus, "the trial court's findings support the conclusion that the officer had developed
 
 reasonable suspicion
 
 of illegal drug activity during the course of his investigation of the traffic offense and was therefore justified to prolong the traffic stop to execute the dog sniff."
 
 State v. Warren
 
 , --- N.C.App. ----, ----,
 
 775 S.E.2d 362
 
 , 365 (2015),
 
 aff'd per curiam
 
 ,
 
 368 N.C. 756
 
 ,
 
 782 S.E.2d 509
 
 (2016). Accordingly, the trial court properly denied Downey's motion to suppress.
 

 Conclusion
 

 We affirm the trial court.
 

 AFFIRMED.
 

 Judge McCULLOUGH concurs.
 

 Judge HUNTER, JR. dissents by separate opinion.
 

 HUNTER, JR., Robert N., Judge, dissenting in a separate opinion.
 

 I respectfully dissent from the majority affirming the trial court's denial of Defendant's motion to suppress. Instead, I would reverse the trial court.
 

 This Court recently addressed the tolerable duration of a traffic stop and the requirements to extend a traffic stop in
 
 State v. Reed
 
 , --- N.C.App. ----,
 
 791 S.E.2d 486
 
 (2016).
 
 See also
 

 State v. Bullock
 
 , --- N.C.App. ----,
 
 785 S.E.2d 746
 
 (2016),
 
 writ of supersedeas allowed
 
 , --- N.C. ----,
 
 786 S.E.2d 927
 
 (2016) ;
 
 State v. Bedient
 
 , --- N.C.App. ----,
 
 786 S.E.2d 319
 
 (2016).
 
 Reed
 
 ,
 
 Bullock
 
 , and
 
 Bedient
 
 provided guidance to our courts based on the United States Supreme Court's decision in
 
 Rodriguez v. United States
 
 , --- U.S. ----,
 
 135 S.Ct. 1609
 
 ,
 
 191 L.Ed.2d 492
 
 (2015).
 

 "[T]he tolerable duration of police inquires in the traffic-stop context is determined by the seizure's 'mission'-to address the traffic violation that warranted the stop, and attend to related safety concerns."
 
 Bedient
 
 , --- N.C.App. at ----,
 
 786 S.E.2d at 322
 
 (quoting
 
 Rodriguez
 
 , --- U.S. at ----,
 
 135 S.Ct. at 1614
 
 ,
 
 191 L.Ed.2d at 498
 
 (internal citations omitted) (brackets in original)). "In addition to deciding whether to issue a traffic ticket, a law enforcement officer's 'mission' includes 'ordinary inquires incident to the traffic stop.' "
 
 Reed
 
 , --- N.C.App. at ----,
 
 791 S.E.2d at 491
 
 (quoting
 
 Bedient
 
 , --- N.C.App. at ----,
 
 786 S.E.2d at
 
 322 ). "This inquiry typically includes checking the driver's license,
 
 *523
 
 determining if the driver has any outstanding warrants, inspecting the vehicle's registration and
 
 *838
 
 proof of insurance...."
 

 Id.
 

 at ----,
 
 791 S.E.2d at
 
 491 (citing
 
 Bedient
 
 , --- N.C.App. at ----,
 
 786 S.E.2d at
 
 322-23 ;
 
 Bullock
 
 , --- N.C.App. at ----,
 
 785 S.E.2d at
 
 751 ). However, an officer is not allowed to conduct his inquiry "in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."
 
 Rodriguez
 
 , --- U.S. at ----,
 
 135 S.Ct. 1609
 
 .
 

 An officer has completed the mission of the traffic stop when the officer communicates he is giving a citation.
 
 See
 

 Bullock
 
 , --- N.C.App. at ----,
 
 785 S.E.2d at 751
 
 . To detain a driver beyond a traffic stop, an officer must have "reasonable articulable suspicion that illegal activity is afoot."
 
 State v. Williams
 
 ,
 
 366 N.C. 110
 
 , 116,
 
 726 S.E.2d 161
 
 , 166-67 (2012) (citing
 
 Florida v. Royer
 
 ,
 
 460 U.S. 491
 
 , 497-98,
 
 103 S.Ct. 1319
 
 , 1324,
 
 75 L.Ed.2d 229
 
 , 236 (1983) ).
 

 The trial court found "Deputy Clifton formed the suspicion that Defendant was engaged in illegal drug activity before he issued the written warning citation to Defendant and returned Defendant's driver's license and the vehicle registration card to Defendant."
 

 Here, the tolerable duration of the traffic stop ended when Deputy Clifton communicated he was issuing Defendant a warning citation for the violation, not when Deputy Clifton actually issued the warning citation.
 
 See
 

 Bullock
 
 , --- N.C.App. at ----,
 
 785 S.E.2d at 751
 
 . However, after Deputy Clifton communicated he was issuing the citation, he engaged Defendant in further conversation and questioned Defendant about Defendant's criminal history. Further, Deputy Clifton asked Defendant for consent to search his vehicle. Deputy Clifton also asked Defendant if Defendant would consent to a canine sniff of the exterior of the vehicle. Lastly, Deputy Clifton called for a K-9 unit, which arrived
 
 fourteen minutes
 
 after Deputy Clifton issued Defendant's citation and returned Defendant's documentation. Thus, for the extension, which lasted
 
 at least
 
 fourteen minutes, to be constitutional, Deputy Clifton must have possessed reasonable articulable suspicion that illegal activity was afoot.
 

 Here, the trial court's findings do not support its conclusion that Deputy Clifton had reasonable suspicion of criminal activity to extend the traffic stop and conduct a search. The behaviors in the trial court's findings do not amount to "reasonable suspicion that illegal activity is afoot."
 
 Williams
 
 ,
 
 366 N.C. at 116
 
 ,
 
 726 S.E.2d at 166-67
 
 (citation omitted). "In order to preserve an individual's Fourth Amendment rights, it is of the utmost importance that we recognize that the presence of [a suspicious but legal behavior] is not, by itself, proof of any illegal conduct
 
 *839
 
 and is often quite consistent with innocent travel."
 
 State v. Fields
 
 ,
 
 195 N.C.App. 740
 
 , 745,
 
 673 S.E.2d 765
 
 , 768 (2009) (citing
 
 United States v. Sokolow
 
 ,
 
 490 U.S. 1
 
 , 9,
 
 109 S.Ct. 1581
 
 , 1586,
 
 104 L.Ed.2d 1
 
 , 11 (1989) ). Reasonable suspicion may arise from "wholly lawful conduct."
 
 Reid v. Georgia
 
 ,
 
 448 U.S. 438
 
 , 441,
 
 100 S.Ct. 2752
 
 ,
 
 65 L.Ed.2d 890
 
 (1980) (citation omitted). However, " 'the relevant inquiry is ... the degree of suspicion that attaches to particular types of noncriminal acts.' "
 
 Sokolow
 
 ,
 
 490 U.S. at 10
 
 ,
 
 109 S.Ct. at 1587
 
 ,
 
 104 L.Ed.2d at 12
 
 (citation omitted).
 

 The majority relies on six factors in affirming the trial court-Defendant's "nervous behavior, his use of a particular type of air freshener favored by drug traffickers, his prepaid cellphone, his use of a car registered to someone else, his ["]suspicious["] responses to Deputy Clifton's questioning, and his prior drug convictions...." As held in
 
 Reed
 
 , "Defendant's nervousness is 'an appropriate factor to consider,' but it must be examined 'in light of the totality of the circumstances' because 'many people do become nervous when [they are] stopped by an officer....' " --- N.C.App. at ----,
 
 791 S.E.2d at 493
 
 (quoting
 
 State v. McClendon
 
 ,
 
 350 N.C. 630
 
 , 638,
 
 517 S.E.2d 128
 
 , 134 (1999) ) (brackets in original). The degree of suspicion attached to Defendant's use of an air freshener, prepaid cellphone, and car registered to someone else is minimal, as it is consistent with innocent travel.
 
 See
 

 id.
 

 at ----,
 
 791 S.E.2d at 493
 
 .
 

 Notably, a case relied upon by the majority,
 
 *524
 

 United States v. Valenzuela-Rojo
 
 ,
 
 139 F.Supp.3d 1252
 
 , 1260 (D. Kan. 2015), is not binding on this Court. Instead, we are bound by the decisions of the United States Supreme Court, the North Carolina Supreme Court, and our precedent. Moreover,
 
 Valenzuela-Rojo
 
 does not discuss or acknowledge the
 
 Rodriguez
 
 decision.
 

 To affirm the trial court, as the majority does, fails to emphasize the United States Supreme Court's direction in
 
 Rodriguez
 
 and our Court's holding in
 
 Reed
 
 . I recognize that search and seizure cases are sui generis and reasonable jurists can disagree.
 

 Accordingly, I would reverse the trial court.
 

 [1]
 

 We also note that Downey has never asserted-either in this appeal or his previous appeal-that it was unconstitutional for the officer to instruct Downey to get out of his car and accompany the officer to the patrol car, where Downey could be questioned while the officer prepared the citation. So, again, this argument is waived.
 
 See
 

 Allen
 
 ,
 
 360 N.C. at 308
 
 ,
 
 626 S.E.2d at 281
 
 .